Good morning, your honors. Please enter the court. This is Warren Winston. I am the representative of the petitioner, Adam Railsford, with an R. I know it's sometimes... Oh, it's Railsford. Okay. Thank you. I stand by it. And I am here because the petition for review raised a unique issue. We received an order from the clerk to brief the question of the effect of a presidential pardon. We have two issues, I believe, in this case that the court should consider. One is how to enforce immigration law when there is no conviction, and at the same time find the person inadmissible, excludable, removable, or whichever term currently applies under the Department of Homeland Security's rubric of enforcement actions. The convictions in this case do not exist any longer. I have made that point to the immigration judge. I have made that point to the Board of Immigration Appeals. And I make that point again today. Unless I'm missing something, they don't exist because they were expunged. That's the issue. And there is no evidence one way or the other as to whether they were expunged because of the defect in the proceeding or for some other humanitarian reason. Precisely, Your Honor. Okay. Let me raise a point. Go ahead. We raised that point to the immigration judge and requested that the case be remanded back to, I guess at that time, the legacy INS or the Citizenship and Immigration Services so that we could proceed with an application that was pending when he departed the United States and returned on an advance parole. Well, but I mean, at the time the application, the proceeding was heard, he could have and didn't have explained the basis for the pardon. Yes. And he attempted to, and he did not do an adequate job of it. The record is pretty clear that at the time that we asked that the case be remanded so that we could provide evidence of how he obtained the pardon, the judge instead made a decision that it was an expungement. I need to give the court a little background information that isn't exactly clear in the record. This couple married in 1999 in the United States. They left the United States to work abroad. They both work in the film industry. They went to an American consul at that time in New Zealand, where they were both working, and discussed his prior convictions. The wife came back to the United States. He went to South Africa. In South Africa, he did whatever the South African procedure was to reopen and vacate his convictions. So did he actually get a presidential pardon? He did. Okay. In South Africa, which is apparently the only remedy, unlike in our courts, where we can make a motion to reopen a criminal proceeding and ask that a judgment be set aside because the plea that was given, which was based on either some plea or the plea, shall we say, future of this particular person. Here, we don't have a problem doing that. We don't reopen them for immigration consequences. We reopen them because there was a defect in the underlying proceedings. He went to South Africa. His wife came here. They were separated for about a year. He obtained the pardon, the only remedy available in South Africa. He went back to the U.S. consulate. He obtained a visa to come here and be with his wife. Clearly, the visa was based on the waiver. Copy the visas in the record. I believe it's Administrative Record, page 101. After they came to the United States. I'm sorry. Yeah, it seems to me one fundamental difficulty that you come up against, no matter how you slice the or what label you put on your argument, is that the immigration laws differ with respect to deportability and admissibility. And whereas you can get a waiver for certain kinds of pardons in the deportability context, there's no similar provision for admissibility. Correct. So where does this go? What we wanted to prove is that he no longer has a conviction, and that he no longer has a conviction which would make him either inadmissible, removable, or excludable from the United States. And the Board of Immigration Appeals acknowledged in their decision, they said it somewhat parenthetically, that there was the possibility that this was vacated based on a legal problem in the original case, the original underlying South African case. We've never had an opportunity to explore that. When you say you never had an opportunity to explore it, it means that you never did in the original proceeding? Correct. Because? We expected that we were going to be before the Immigration and Naturalization Service, the legacy INS, where he had filed his application. When he returned to the United States, they immediately put him into immigration court proceedings, where the judge refused to remand the case back. Now, to the Immigration and Naturalization Service. But wait a minute. Just hold on. The judge, meaning the immigration judge, refused to remand back to who? To Immigration and Naturalization Service. But you're before the I.J. Why not just do it? Because we have an arriving alien and jurisdiction. This circuit has discovered in the Bono case that the jurisdiction for an arriving alien belongs to the Department of Homeland Security, not to the immigration court. We tried to make that argument. The board then would not remand it back to the immigration judge. So we've made the same argument again that the case should be remanded so that he can show what were the defects in the original case in South Africa. So remanded to whom? Today, the board. The board would then send it to the immigration judge. Let me ask you something. Because under the statute, if he may be admissible if he did not commit the underlying conduct. Precisely. Okay. That's in the statute. Precisely. And you're saying that's the piece you've never had a chance to. Precisely. The method of obtaining the pardon in South Africa, unfortunately, I spoke with the council in South Africa myself. Unfortunately, that record is sealed by the government. They only issue the document that says the pardon was granted. And then when I asked for evidence that it had been granted, they said to apply for a certificate, what we call a police clearance. And the certificate, which is in the record, says he has no convictions. So what we have is we have a person who has no longer a conviction. Are there records that show the basis upon which he sought the pardon? That's the problem, the basis of the pardon. Answer my question. He knows. We've never been able to present it. Wait a second. I just want to get clear. Okay. Are there records that show the basis upon which he sought the pardon? Yes. And he must have those? No. But they're his papers. The council in South Africa submitted them to the government. Without keeping a copy? I have, unfortunately, I have tried to seek them myself. You're kidding. No. And the South African government is in crisis. The only thing we can do is have his testimony. Now, the immigration judge has found him to be credible. This man has never, never hidden what happened to him. Well, what happened? Do we know what happened? May I? It's not evidence, but I will be happy to tell you. I'd like to take a proffer of what happened. He was given an opportunity to enter a plea for something he did not do. And he took the plea and accepted a minimum consequence and left the country and went to work in New Zealand. He spent very little time in South Africa, even though he was born there. After that occurred, he, in essence, started a new life. And this has haunted him ever since. So the pardon, the issue of the pardon brings up two different questions. One is, yes, what is the effect of the pardon? But the second one is, was this man actually convicted of a crime that he committed, or did he just take a plea bargain? I keep coming back to the same question, I guess, is that that's information internally within his own knowledge. Right. So he was before the immigration judge. He made an appeal to the BIA asking for a remand back to the immigration judge. So that we could present that. That he just came from and had a chance to present it, made no proffer to the BIA about what he would show. Well, normally we don't do that. What we do is we look at the record at the IJ stage. He did say that he collected documents. It took him almost a year to collect documents to prove that he was not in fact guilty of the crime. I understand, but that got into the pardon. And the pardon gets him nowhere over here unless the effect of it, unless it was based upon a defect in the underlying proceedings. And that is the point that we have been trying to make. We would like a hearing on that issue. But why didn't you have that hearing? Why didn't you have that the first time? Because the South African government would not, if I may say, release. Mr. Evans, so is this something where maybe you need to do a motion to reopen? Yes. I could on remand bring evidence. And you don't need a motion to reopen. What do you want to prove on remand? That there's a defect in the underlying proceeding, that he never should have entered a guilty plea for a crime he never committed. And why couldn't he have done that the first time? While he was in front of the immigration judge. Yes. And the record, he started to explain. I was there, so I know. Yes, okay. He started to explain how he got the pardon. The immigration judge just concluded this is an expungement, and therefore, it's a removal of a record that you were guilty and rendered a decision stating that it was an expungement. The Board of Immigration Appeals, in essence, rubber-stamped it by saying the same thing. But they did leave open the same area, the same question was still open. Was there a defect in the underlying proceedings? In the brief submitted by counsel today, they also include in their conclusion the possibility, and I can read it, it says that Brailsford established that, ultimately, had Brailsford established that a South African pardon was a vacatur based on legal defects in the underlying criminal proceedings, or that he was pardoned pursuant to a foreign counterpart of the FFOA, the Board could have, consistent with this Court's case law, found him admissible to this country. That's what we want. So if they could talk to each other about this and see if they would just be willing to have you present the evidence and, you know, some sort of mediation. I mean, if he has the evidence, he fits within the category. I think he would have to testify on the record in order to do that. I mean, you could make a proffer. You know, you could talk to government counsel. Maybe we should hear from the government. I would like to. Oh, no, I'm out of time. You're in the red. I'm sorry. I apologize. Go ahead. It's been a long morning, I'm sorry. Thank you. It has for us, too. Good morning, Your Honors. May it please the Court. Kelly Walsh for the respondent, the Attorney General. Mr. Brailsford was charged as inadmissible to the United States based on his possession of LSD conviction coming out of South Africa. He had the burden of establishing clearly and beyond a doubt that he was entitled to be admitted to the United States and was not inadmissible based on that drug conviction. Although he produced evidence of a pardon from the South African president, he did not establish that pardon in effect eliminated U.S. immigration consequences. Because he failed to meet his burden, the Board's finding that he was inadmissible as charged is not manifestly contrary to law. The Immigration and Nationality Act does not recognize as a general matter that pardons waive drug convictions, neither for inadmissible nor deportable aliens. The only waivers explicitly recognized in the Immigration and Nationality Act are waivers of deportability for aliens who have committed crimes involving moral turpitude, aggravated felonies, or high-speed flight away from an immigration checkpoint. That's not an issue in this case. He's not charged as deportable, and those aren't the crimes at issue. The only other two ways a pardon can affect a conviction in immigration proceedings is if it would qualify under the Federal First Offender Act or if it is based on a defect in the underlying proceedings. For the Federal First Offender Act, as the title suggests, it has to be a first offense. We know this was Mr. — the LSD possession conviction was Mr. Brailsford's second offense. So the FFOA is really not an issue. But the issue is, the issue is whether or not he actually committed the act for which he pled guilty, i.e., whether there's a defect in the proceedings there, and whether that was the basis of the pardon. We know that's the issue. Okay. I'm getting there, Your Honor. So because Mr. Brailsford was an arriving alien, he had the burden to establish that that pardon was based on an underlying defect in the criminal proceedings. And he — He has said that he couldn't get the underlying documentation. Could he have testified that he obtained the pardon by submitting documentation that showed that he didn't commit the crime? Of course. Or that the judge never permitted him a hearing or something like that? Of course he could have. Would that have been sufficient for the immigration judge? I don't know. I'm not — I don't know what the — Would the government have objected to it? Probably not, because he actually did testify about what he had to do to obtain the pardon. And what he said was that he was required to get letters from members of the community to submit with his documentation. That's really the only evidence that was put forward as to what he — why he received a pardon. And that tends to suggest it was based on rehabilitation, not an underlying defect. We don't know at all who was based on it. No. I would also suggest that because we're looking at two convictions occurring apart, a 1990 cannabis conviction and a 1993 LSD conviction, that were expunged in the same presidential pardon, that that seems highly unlikely to me that these were two separate proceedings that both had underlying defects. So when we look at that evidence, the immigration judge rightfully concluded that he had not met the burden of showing that the conviction was expunged for a defect. Well, you know, that's the thing. Both the B.I. and the I.J. talk about expungement. They call this an expungement. It wasn't an expungement. Sure. It's a presidential pardon. Although the pardon itself does use the word expungement. Right. But it's not an expungement in the sense that we normally use that word in the immigration context with all the immigration consequences. Sure. And as I said at the outset, a pardon itself has no effect under the Immigration and Nationality Act, except for as provided for those grounds of deportability. So the fact that it's a pardon versus an expungement doesn't really come into play in this case. The problem is, is however he got rid of his conviction, he hasn't shown why the conviction was used. So once he got the documents, and he said he asked for a remand, and he wasn't  So shouldn't the B.I.A. have given him the remand at that point? No. It was his. He's produced no evidence as to why he should be excused from meeting his burden of proof before the immigration judge. He doesn't get the proverbial second bite at the apple because he has difficulty getting his evidence. He failed to meet the burden to show that he was clearly and beyond a doubt entitled to admission before the immigration judge. Did he ever actually get those documents? As to my knowledge, we've not heard of anything. I mean, there were no documents submitted with his appeal. He's never filed a motion to reopen based on the, you know, obtaining previously unavailable evidence. So, I mean, at this point, he wants a remand to go back to testify as to the reason why he received the pardon, something he had every opportunity to do before the immigration judge in the first case. If the Court has no further questions, we would just ask that the petition for review be denied as Mr. Brailford failed to meet his burden of proof. Thank you. If he has documents, he could bring a motion to reopen at this point. He could bring a motion to reopen. The burden of reopening, of course, is very high, but that would be a possibility available to him. Well, usually with new evidence, right? You would have to say that it was not available at the time of the immigration judge hearing, assuming he could meet that the Board would adjudicate it accordingly. Are there any further questions to the petition? No. Thank you. The matter just argued is submitted for decision. That concludes the Court's calendar for today, and the Court stands adjourned. All rise. This Court is now adjourned. Thank you.
judges: Schroeder, Rymer, Wardlaw